UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>**RITA CHILDERS,**<br><br>　　　　　Debtor. | Case No. 23-44208-169<br><br>Chapter 7 |
| **TIMOTHY A. BARKLAGE,**<br><br>　　　　　**Plaintiff,**<br><br>v.<br><br>**RITA CHILDERS,**<br><br>　　　　　**Defendant.** | Adv. Proc. No. 24-04011-357 |
| In re:<br><br>**CANDICE HAAS,**<br><br>　　　　　Debtor. | Case No. 23-44350-659<br><br>Chapter 7 |
| **TIMOTHY A. BARKLAGE,**<br><br>　　　　　**Plaintiff,**<br><br>v.<br><br>**CANDICE HAAS,**<br><br>　　　　　**Defendant.** | Adv. Proc. No. 24-04015-357 |

# MEMORANDUM OPINION ON
# DEFENDANTS' MOTIONS TO DISMISS

In these adversary proceedings, Plaintiff Timothy A. Barklage (the "Creditor") seeks to deny Defendants Rita Childers and Candice Haas (the "Debtors") a discharge of certain debts related to the Debtors' business, Core + Rind, LLC. According to the complaints (Doc. 1)[1] (the "Complaints"), the debts are nondischargeable under Sections 523(a)(2)(A), (a)(2)(B), and (a)(6) of the Bankruptcy Code because of misrepresentations and other actions by the Debtors. The Debtors filed motions to dismiss the claims for failure to state a claim upon which relief can be granted (Doc. 13) (the "Motions"). The Creditor filed responses to the Motions (Doc. 18) (the "Responses"). The Motions have been fully briefed, and I heard oral arguments on May 15, 2024. For the reasons that follow, I will grant the Motions, with leave to amend the Complaints.

## I.     Jurisdiction

The Court has subject-matter jurisdiction under 28 U.S.C. § 1334(b) because all claims in these adversary proceedings either arise under Title 11 or are related to the bankruptcy cases of the Debtors. These are core proceeding under 28 U.S.C. § 157(b)(2)(I). In any event, all parties have consented to the entry of final judgments by the Bankruptcy Court.

## II.    Summary of Allegations

The Creditor alleges that on or about April 1, 2022, the Debtors solicited the Creditor for a line of credit for use in the Debtors' jointly owned business, Core + Rind, LLC (Compl. ¶ 4). In oral and written communications with the Debtors, the Creditor "made explicit his expectations that any line of credit would be secured by Core + Rind, LLC's current inventory, accounts, receivable[s], and work in progress," and that "any monies lent to the [Debtors] [were] to be used only to support the production of the goods" (Compl. ¶ 5-6). The Debtors accepted those terms and on June 8, 2022, executed a Convertible Promissory Note and Security Agreement (the "Note"), in which they and the company jointly promised to pay the principal balance of all credit advances, not to exceed $325,000, plus interest at a

---

[1] Citations to the docket and to excerpts from the Complaints are to those in Adversary Proceeding No. 24-04011. However, the corresponding documents in each adversary proceeding are substantively identical.

variable rate (Compl. ¶ 7-8).[2] The Note itself contains no covenants or representations pertinent to the Creditor's allegations.

Both "[d]uring and continuing after the draws authorized by the Note," the Debtors communicated with the Creditor and provided financial statements that assured the Creditor that "the funds were only used for 'production draws'" (Compl. ¶ 9). "After the final draw" was taken, the Creditor sought additional information from the Debtors, because he was concerned that the funds had been used for purposes other than production draws (Compl. ¶ 10). In response, the Debtors emailed the Creditor, "lull[ing] the [Creditor] from taking action to ensure the debt owed to him or the [assets] secured thereby remained viably collectible"; revealing that they had used the funds for unapproved purposes, including to make payments to other creditors; refusing to disclose the identity of other professionals used with respect to business decisions; and "solicit[ing] but delay[ing] meetings" with the Creditor (Compl. ¶ 10(a)-(d)). The Debtors then failed to make payments as contemplated by the terms of the Note (Compl. ¶ 20).

Unable to reach any agreement with the Debtors to satisfy the Note, the Creditor filed suit in state court on July 18, 2023 (Compl. ¶ 11). The Debtors commenced their Chapter 7 bankruptcy cases shortly thereafter (Compl. ¶ 12-13).

The Creditor makes a number of new factual assertions in his Responses. Because these assertions are neither contained in nor embraced by the pleadings, I cannot consider them in resolving the Motions. *See AFY*, 571 B.R. at 836.

III. Analysis

A. Pleading Standard

Federal Rule of Civil Procedure 12(b)(6), made applicable here by Federal Rule of Bankruptcy Procedure 7012(b), permits a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In resolving a Rule 12(b)(6) motion, a court must accept as true all factual allegations in the complaint and draw

---

[2] Although the Complaints state that the Note is attached, it was not. The Creditor filed the Note as a supplement on May 29, 2024, while the Motions were under submission. Still, it is appropriate for me to consider the Note because it is "necessarily embraced by the pleadings." *In re AFY, Inc.*, 571 B.R. 825, 836 (B.A.P. 8th Cir. 2017) (citation omitted). The parties also agreed at the hearing that I may consider the Note in resolving the Motions.

all reasonable inferences in favor of the non-moving party. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017).

To state a claim for relief, a plaintiff's pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008(a). The allegations in a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint states a plausible claim for relief if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (citation omitted).

### B.    Rule 9(b) and Different Theories of Recovery

Federal Rule of Civil Procedure 9(b) establishes a heightened pleading standard for allegations of fraud or mistake, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009. However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The particularity required by Rule 9(b) "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *United States ex rel. Joshi v. St. Luke's Hospital, Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (citation omitted). In an action alleging fraud, "the complaint must identify the who, what, where, when, and how of the alleged fraud." *Id*. (cleaned up).

Rule 9(b) applies to claims alleging "actual fraud" under Section 523(a)(2)(A). *See In re Miltenberger*, 538 B.R. 547, 553 (Bankr. E.D. Mo. 2015) ("Because [Plaintiff] proceeds under an allegation of actual fraud . . . the pleading requirements of Federal Rule of Civil Procedure 9(b) apply."). A claim of "false representation" also is subject to Rule 9(b), at least in jurisdictions that require the plaintiff to show an intent to deceive or defraud a creditor, which is fundamentally equivalent to a claim of fraud. *See In re Wiethuchter*, 147 B.R. 193, 198 (Bankr. E.D. Mo. 1992); *In re Young*, 91 F.3d 1367, 1375 (10th Cir. 1996); *but see In re Kinard*, 621 B.R. 231, 244 (W.D. Mo. 2020) (holding that a negligent misrepresentation may be a "false representation"), *aff'd on other grounds*, 998 F.3d 352 (8th Cir. 2021).

Determining whether Rule 9(b) applies to a claim grounded in "false pretenses" is more difficult, particularly where such a claim involves intentional non-disclosures, as in *In re Van Horne*, 823 F.2d 1285, 1288 (8th Cir. 1987) (abrogated on other grounds by *Grogan v. Garner*, 498 U.S. 279 (1991)). *Compare In re Bluemeyer*, Adv. No. 99-4202-293, 2006 WL 4446480, at *2 (Bankr. E.D. Mo. Oct. 10, 2006) ("Any complaint asserting that a particular

debt is excepted from discharge under the fraud exception of § 523(a)(2) is subject to the heightened pleading requirement of Rule 9(b)."), *with In re Aseireh*, 526 B.R. 246, 250 (Bankr. N.D. Ohio 2015) (holding that allegations of false pretenses must meet only the Rule 8(a) standard). Ultimately, however, it is not necessary for me to decide if Rule 9(b) applies specifically to false pretenses or intentional non-disclosure, because the factual assertions in the Complaints do not suggest either of those theories of recovery.[3]

Claims brought under Section 523(a)(2)(B) are also subject to Rule 9(b)'s heightened pleading standard. *See In re Shelton*, 42 B.R. 547, 548 (Bankr. E.D. Mo. 1984) (requiring the plaintiff to amend its complaint to allege more specific facts as to how the defendant "caused" a false financial statement to be made).

A typical claim of willful and malicious injury under Section 523(a)(6) does not involve fraud or mistake and thus does not require the plaintiff to comply with Rule 9(b). But it is conceivable that a debtor may injure a plaintiff willfully and maliciously by defrauding him, or by engaging in other conduct in which fraud plays a role. *See generally Grogan v. Garner*, 498 U.S. 279, 282 n.2 (1991) (suggesting that certain fraud claims may be governed by § 523(a)(6)). Because Rule 9(b) applies to *allegations* of fraud, not merely *claims* for fraud, a plaintiff advancing such a claim may be required to plead the circumstances constituting the fraud with particularity. As explained below, I cannot determine whether the Creditor is attempting to plead a fraud-derived claim in Count III of the Complaints. Thus, I will defer a decision on the application of Rule 9(b) to this claim until the issue is presented concretely.

### C. The Section 523(a)(2)(A) Claim in Count II Is Insufficiently Pleaded

Under Section 523(a)(2)(A), a debt is not discharged to the extent that it is for money, property, services, or an extension, renewal, or refinancing of credit, obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A). Regardless of whether a plaintiff alleges a "false representation," "false pretense," or "actual fraud," he must show that "a debtor (1) made a representation, (2) with knowledge of its falsity, (3) deliberately for the purpose of deceiving the creditor, (4) who justifiably relied on the representation, and which

---

[3] During the hearing on the Motions, the Creditor conceded that Rule 9(b) applies to all of his claims under Section 523(a)(2).

(5) proximately caused the creditor damage." *In re Hernandez*, 860 F.3d 591, 602 (8th Cir. 2017).[4]

According to the Creditor, the facts stated above indicate that "the Note was solicited and drawn upon by [the Debtors] with knowledge of [their] inability, unwillingness, or intent to either use it for the purposes agreed upon with [the Creditor] or pay it,"[5] and that the Debtors "obtained the Note, entitlement to the draws thereunder, and the use of the funds, through [their] false pretenses, a false representation, or actual fraud upon the [Creditor]" (Compl. ¶ 29-30). But these conclusory statements are not supported by factual assertions that identify the "who, what, where, when, and how" of the alleged fraud. *Joshi*, 441 F.3d at 556 (citation omitted).

First, the Creditor's allegations do not indicate in any detail what representations were made by the Debtors or which of those representations were false. The Complaints also do not provide any real factual assertions that the Debtors knew their representations were false at the time they made them. The Responses point to Paragraphs 9, 10, 29, 30, and 31 in the Complaints. But Paragraph 9 merely alleges—vaguely—that the Debtors gave assurances to the Creditor, without specifying when they were given or why they were false. Paragraph 10, which notably takes place "after the final draw" was taken upon the line of credit, provides the only indication that the Debtors used the funds contrary to the terms of the Note, but it does not assert that the Debtors knew their representations were false at the time they made them. And finally, Paragraphs 29, 30, and 31, which do finally suggest the Debtors acted with knowledge of their inability or unwillingness to pay or use the funds properly, are conclusory legal assertions which rely on the facts "as set forth above"; they do not include new factual assertions.

More generally, the Creditor does not identify which communications are at issue in these adversary proceedings, asserting only that "communications" occurred between the parties. These allegations do not "enable the defendant to respond specifically and quickly to the potentially damaging allegations." *Id.*

---

[4] The Supreme Court's recent decision in *Bartenwerfer v. Buckley*, 598 U.S. 69 (2023), clarifies that a debtor need not be the fraudulent actor. Because nothing in the Complaints indicates that the Creditor seeks to hold either of the Debtors vicariously liable for the acts of someone else, I need not explore the implications of *Bartenwerfer* further.

[5] For purposes of my analysis, I assume that the Creditor intended to allege that the Debtors had the intent *not* to use the funding for the purposes agreed upon or to repay it.

Though the allegations are vague, it is possible to identify three distinct time periods in which the Debtors may have made representations: before the loan was funded, when the loan had been partially funded and the Debtors requested additional draws, and after the last draw. Because the Rule 12(b)(6) issues are different for each of these periods, I discuss them separately.

To the extent that the Creditor contends that the Debtors defrauded him by misrepresenting in advance how they would use his funding, the Complaints do not state a claim. To prevail on such a theory, the Creditor must plead and prove that the Debtors, when they made the representations, did not intend to perform. *See Stevens v. Markirk Construction, Inc.*, 454 S.W.3d 875, 881 (Mo. 2015); *Paul v. Farmland Industries, Inc.*, 37 F.3d 1274, 1277 (8th Cir. 1994). In a claim alleging fraud based on a statement of present intent, "[i]t is not enough that for any reason, good or bad, the speaker changes his mind and fails or refuses to carry his expressed intention into effect." *Paul*, 37 F.3d at 1277. Stated differently, the speaker's mere failure to perform in accordance with her earlier representation is a breach of promise, but it is not a misrepresentation. *See Stevens*, 454 S.W.3d at 881. Though the Creditor has alleged in Paragraph 29 that the Debtors solicited the funds with knowledge of their "inability, unwillingness, or intent [not] to either use [the funds] for the purposes agreed upon with [the Creditor] or pay it," the assertion is conclusory; there are no factual assertions alleged to indicate that the Debtors "actually did not intend to perform consistently with [their] words" at the time the representations were made. *Paul*, 37 F.3d at 1277. And though the Creditor rightly points out that intent may be pleaded generally under Rule 9(b), Paragraph 29 is disjunctive in multiple respects. Unwillingness to use the funds as agreed, for example, is not necessarily fraudulent, and intent not to repay the loan, though potentially fraudulent in some circumstances, bears no apparent connection to the Creditor's allegations.

Paragraph 9 also could be construed to allege that in the middle of the lending relationship, the Debtors made false statements about then-existing factual matters, inducing the Creditor to honor additional draws on the line of credit. For example, the Debtors might have misrepresented how they had used funds from the initial draws, or the amount of cash they had remaining, or the status of their relationships with other creditors. If representations like those caused the Creditor to conclude that it was appropriate to advance the remaining funds, the Creditor may be able to state a claim based on actual fraud or false representations. But the sufficiency of the Complaints does not turn on my ability to imagine what might have occurred. Instead, the plaintiff must plead the claim and, because this is a fraud-based claim, plead the circumstances with particularity. The Creditor has not done so here.

Finally, the Creditor has relied in part upon the detail provided in Paragraph 10 of the Complaints. However, as is noted above, that paragraph begins by stating "[e]ven after the

final draw was taken." These allegations do not support the proposition that the Debtors "obtained" money through false representations or fraud because, by that point, the Debtors had already obtained the funds from the Creditor. *See In re Unterreiner*, 699 F.3d 1022, 1026 (8th Cir. 2012); *In re Glen*, 639 F.3d 530, 533 (8th Cir. 2011). Thus, as to these representations, the Creditor has not stated a claim.

For these reasons, the Creditor's Section 523(a)(2)(A) claim does not satisfy the particularity requirements of Rule 9(b) and, in many respects, does not state a claim upon which relief can be granted.

### D.    The Section 523(a)(2)(B) Claim in Count II Is Insufficiently Pleaded

Section 523(a)(2)(B) excepts from discharge a debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by the use of a statement in writing (1) that is materially false, (2) respecting the debtor's or an insider's financial condition, (3) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied, and (4) that the debtor caused to be made or published with intent to deceive. 11 U.S.C. § 523(a)(2)(B).

The Creditor's cause of action under Section 523(a)(2)(B) is also insufficient under Rule 9(b). Though the Complaints allege generally that the parties exchanged emails and make a cursory reference to some financial statements sent between the parties, there is no indication which communications and documents form the basis for the claim, nor any particular allegations as to what written statements dealt with the Debtors' or an insider's financial condition.

In addition, although Paragraph 31 of the Complaints suggests that the Debtors obtained funds "by statements in writing made to [the Creditor] . . . which were materially false and respected the [Debtors'] financial condition," the Complaints do not include factual content to back those recitations of the elements of the claim. Paragraphs 5, 7, 9, and 10 indicate that the parties engaged in written communications, but only Paragraphs 9 and 10 refer to financial information. More importantly, none of the paragraphs allege that any aspect of the information provided was materially false. The Creditor's legal conclusions in Paragraph 31 cannot substitute for the requisite factual matter. *See Iqbal*, 556 U.S. at 678.

Accordingly, the Creditor's claim under Section 523(a)(2)(B) also is insufficient under Rules 9(b) and 12(b)(6).

### E.   The Section 523(a)(6) Claim in Count III Is Insufficiently Pleaded

Section 523(a)(6) states that any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is not discharged. 11 U.S.C. § 523(a)(6). To state a claim under Section 523(a)(6), a plaintiff must allege three essential elements: "(1) the debtor caused an injury to the creditor; (2) the injury must have been willfully inflicted— that is, the debtor must have desired the injury or must have been substantially certain that his conduct would result in the injury; and (3) the debtor's actions must have been malicious." *In re Luebbert*, 987 F.3d 771, 778 (8th Cir. 2021). Generally, a debtor must have committed some action akin to an intentional tort. *See Kawaauhau v. Geiger*, 523 U.S. 57, 63 (1998) (affirming that debts arising from recklessly or negligently inflicted injuries "do not fall within the compass of Section 523(a)(6)"). Breach of contract, with nothing more alleged, is not willful and malicious injury. *See Luebbert*, 987 F.3d at 781. However, when a debtor's conduct accompanying a breach of contract amounts to an intentional tort against the creditor, the debt may be excepted from discharge. *See id.* at 782.

It is unclear whether the Creditor's Section 523(a)(6) claim depends on or derives from the intentional tort of fraud. Thus, I cannot determine whether the particularity requirement of Rule 9(b) applies here. Regardless, the Creditor has not pleaded sufficient factual content under the Rule 8 standard. Rather, his claim reads as a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The Creditor alleges that the facts provided in the Complaints show that the Debtors:

> authored a scheme and practice to cause [the Creditor] to lend [the Debtors] money for [their] business, that [they] would use those funds for no purposes other than those agreed upon when soliciting those funds (while using those proceeds to pay other personal creditors such that they would not be listed in [their] bankruptcy case[s]), [they] would make disclosures to [the Creditor] which caused him to continue to allow for the draws under that agreement, or lull him into seeking no additional protections to secure or otherwise obtain protections for the repayment of his debt.

(Compl. ¶ 35). But as discussed above, the Creditor has provided only vague or conclusory allegations in support of this general theory of his case.

Certain acts alleged in Paragraphs 10, 29, and 35 could, with additional factual color, constitute willful and malicious injury. For example, the delay and rescheduling of meetings and other evasive behavior alleged in Paragraph 10 of the Complaints might be willful and malicious if those actions were intentional, were targeted at the Creditor, and created an opportunity for the Debtors to further disadvantage the Creditor somehow. But Paragraphs

10 and 29 do not suggest such facts, and the conclusory statements in Paragraph 35 do not close the gap.

The Creditor correctly points out that Rule 9(b) permits him to allege malice generally. Fed. R. Civ. P. 9(b). But that does not excuse him from the requirement to support his claims of willful and malicious conduct with factual allegations that make his claim plausible on its face. As currently pleaded, the Creditor's allegations do not amount to more than a breach of contract. Neither a knowing breach of contract nor a reckless disregard of a creditor's economic interests constitutes willful and malicious injury. *See Luebbert*, 987 F.3d at 781. And to the extent that the Creditor seeks to rely on the intentional tort of fraud to elevate a fundamentally contractual claim to a willful and malicious injury, it falls short for the same reasons that Count II does.[6]

Thus, the Creditor's Section 523(a)(6) count fails to state a claim upon which relief can be granted.

### F. The Claim on the Note in Count I Is Not Ripe for Adjudication

Before adjudicating any matter before it, a federal court must ensure that it has jurisdiction to resolve the dispute. *In re Pettine*, 655 B.R. 196, 206 (B.A.P. 10th Cir. 2023). The Court has jurisdiction to liquidate and enter judgment on a non-dischargeable debt. *In re Ungar*, 633 F.3d 675, 679 (8th Cir. 2011). Some recent cases suggest that Article III limitations, such as ripeness, do not apply to Article I bankruptcy courts. *See, e.g.*, *In re Highland Capital Management, L.P.*, 74 F.4th 361, 366 (5th Cir. 2023) (concluding that Article III standing requirements do not apply to Article I bankruptcy courts). In the Eighth Circuit, however, Article III standing is required in bankruptcy court. *In re Farmland Industries, Inc.*, 639 F.3d 402, 405 (8th Cir. 2011) ("[F]ederal courts must ensure that Article III standing exists.").

---

[6] In the Responses, the Creditor sets forth another theory that might show willful and malicious injury (or the obtaining of money by fraud): the Debtors urgently needed funding to satisfy the demands of another creditor that also had an equity interest in the company. Under this characterization of the facts, the Creditor was "the mark" and "there was no intent to ever pay him back" or to use his funds for the production of goods. However compelling these allegations may appear, they are not included in the Complaints and cannot be considered. *See AFY*, 571 B.R. at 836.

As explained above, the Creditor's nondischargeability claims are not sufficiently pleaded. The Debtors' bankruptcy cases also both currently appear to be no-asset cases. Whether or not the Debtors owe money to the Creditor, and how much, is not a meaningful question unless the debts are or may be excepted from discharge.

Accordingly, Count I is not ripe for adjudication without a viable claim under Section 523(a).

## V.   Conclusion

For these reasons, I will enter orders in each of these adversary proceedings dismissing Counts II and III under Rules 9(b) and 12(b)(6), with leave to amend. Count I will be dismissed without prejudice as unripe, with leave to reassert the claim alongside amended versions of Count II, Count III, or both.

Dated: May 31, 2024
St. Louis, Missouri
cjs

Brian C. Walsh
United States Bankruptcy Judge

Copies to:

**Adam Grissom Breeze**
Millsap & Singer, LLC
612 Spirit Drive
St. Louis, MO 63005

**Rita Childers**
4420 Wabash Avenue
St. Louis, MO 63109

**Candice Haas**
1200 Fain Drive
St. Louis, MO 63125

**Robert E. Eggmann**
Carmody MacDonald P.C.
120 South Central Avenue, Suite 1800
Clayton, MO 63105

**Nathan R Wallace**
Carmody MacDonald PC
120 S Central Ave, Ste 1800
St Louis, MO 63105